UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CARLOS PEREZ, :
               Plaintiff, :
v. :
     :  **OPINION AND ORDER**
ANTHONY J. ANNUCCI, :
SUPERINTENDENT THOMAS GRIFFIN, :  18 CV 147 (VB)
C.O. TRAVIS J. ROWLAND, and C.O. :
JAMAL POLLINS, in their individual and :
official capacities, :
               Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Carlos Perez, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 against defendants Anthony J. Annucci, Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); Superintendent ("Supt.") Thomas Griffin; Correction Officer ("C.O.") Travis J. Rowland; and C.O. Jamal Pollins. Plaintiff claims defendants violated his Eighth Amendment rights by (i) subjecting him to, (ii) failing to protect him from, (iii) failing to intervene to prevent, or (iv) acting with deliberate indifference to the use of excessive force.[1]

---

[1] Plaintiff invokes both the Eighth and the Fourteenth Amendments. However, plaintiff alleges he was a convicted inmate at all relevant times. Accordingly, the Eighth Amendment, not the Fourteenth Amendment, governs plaintiff's claims. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

    Plaintiff also invokes 42 U.S.C. § 1988. Section 1988 "does not create a right of action in any situation." Lefcourt v. Legal Aid Soc., 445 F.2d 1150, 1154 n.2 (2d Cir. 1971). Thus, the Court dismisses any claims asserted under that statute.

    Lastly, the moving defendants seek dismissal of any state law claims in the amended complaint. The amended complaint asserts claims for "conduct cognizable under federal law" only. (Am. Compl. ¶ 1). And while the amended complaint elsewhere invokes the Court's jurisdiction under both federal law and "New York State common law" (id. ¶ 10), plaintiff's claims are explicitly labeled as arising under 42 U.S.C. § 1983 (see id. at 11, 13). Therefore, the Court construes the amended complaint as asserting only federal law claims.

1

Now pending is defendants Annucci, Griffin, and Pollins's motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #25).[2]

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and its exhibits and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges he was a convicted inmate housed at Green Haven Correctional Facility ("Green Haven") at all relevant times.

I. <u>The Alleged Assault</u>

On the morning of May 15, 2017, plaintiff alleges he was assigned to a room in "the hospital at Green Haven." (Am. Compl. ¶ 14). According to the amended complaint, plaintiff asked C.O. Rowland for a towel so plaintiff could take a shower. Rowland allegedly refused to get plaintiff a towel and told plaintiff "to get away from the door" of his room. (<u>Id</u>.).

Plaintiff allegedly asked to speak with a sergeant. In response, plaintiff claims Rowland opened the door to plaintiff's room, entered the room, grabbed plaintiff, threw plaintiff onto a bed, and punched plaintiff on the back of the head. Rowland then allegedly screamed, "Do you still want to see the fucking Sergeant asshole, because if you do, I will make sure that I will send your fucking ass to the Box, because I run shit up here." (Am. Compl. ¶ 17).

---

[2] Defendant Rowland has answered the amended complaint and does not join in the motion to dismiss. (<u>See</u> Doc. #27).

Plaintiff alleges C.O. Pollins was in plaintiff's room throughout the assault and "was staring at the Plaintiff and laughing at the Plaintiff the whole time." (Am. Compl. ¶ 23). Plaintiff claims an inmate named Acevedo was also in the room and later offered to testify about the incident on plaintiff's behalf. (Id. ¶¶ 21-22).

According to the amended complaint, plaintiff was discharged from the hospital later that day. At approximately 4:00 p.m., a non-party sergeant stationed in the hospital allegedly summoned plaintiff after learning of the alleged assault and photographed plaintiff's head and body to document any injuries. Plaintiff alleges "an injury report was . . . made out for the Plaintiff to sign." (Am. Compl. ¶ 26).

Plaintiff claims he unsuccessfully grieved Rowland's alleged assault, and that he complained to DOCCS's Office of Special Investigations and was interviewed as part of that office's investigation into his complaint.

II.  Monell Allegations

Plaintiff claims Rowland's assault is "consistent with an oft-recurring pattern of abuse of prisoners" at Green Haven. (Am. Compl. ¶ 3). Plaintiff asserts Annucci knew correction officers frequently used excessive force against inmates, in part because Annucci allegedly received "on a daily basis . . . reports of applications of force, allegations of unreported use of force, and other breaches of security in DOCCS prisons." (Id. ¶ 6).

Plaintiff alleges DOCCS has known "[f]or decades, through DOCCS reports and civil litigation," that staff at its facilities engage in "routine, dangerous, and unconstitutional use of excessive force." (Am. Compl. ¶ 28). Plaintiff also alleges DOCCS and Annucci were "made aware of" DOCCS's "near-refusal . . . to bring disciplinary charges against its officers who use excessive force and fail to report excessive force used by other officers." (Id. ¶ 32). Plaintiff

3

asserts "DOCCS and its supervisors . . . cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York State prisons," or of DOCCS's purported failure "to take sufficient measures to investigate and discipline this abuse." (Id. ¶ 34).

Plaintiff further claims "DOCCS has not taken sufficient steps to curb the abuse that occurs routinely in New York State prisons." (Am. Compl. ¶ 35). Instead, DOCCS allegedly "allows that abuse to persist through inadequate investigations of allegations of use of force incidents and allegations of staff misconduct and the failure to discipline officers in the face of obvious wrongdoing." (Id.).

Plaintiff claims DOCCS and Annucci's alleged inaction in the face of correction officers' frequent use of excessive force against inmates caused "staff members to believe that they can assault and injure prisoners with impunity," and was "a direct and proximate cause of Plaintiff's injuries." (Am. Compl. ¶ 33).

## DISCUSSION

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe a pro se litigant's submissions and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges a civil rights violation. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.     Personal Involvement

Annucci and Griffin argue plaintiff's claims against them in their individual capacities should be dismissed for failure adequately to plead their personal involvement in a violation of plaintiff's constitutional rights.

The Court agrees.

A defendant's personal involvement in an alleged constitutional deprivation "is a prerequisite to an award of damages under § 1983." Spavone v. N.Y. State Dep't of Corr. Servs.,

719 F.3d 127, 135 (2d Cir. 2013) (internal citation omitted). Accordingly, Section 1983 liability cannot be predicated on a theory of respondeat superior alone, see City of Canton v. Harris, 489 U.S. 378, 385 (1989), and "[t]he bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim," Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).

To state a Section 1983 claim for supervisory liability, a plaintiff must plausibly allege the defendant (i) directly participated in a constitutional violation, (ii) failed to remedy a constitutional violation of which the defendant learned through a report or appeal, (iii) created a policy or custom under which a constitutional violation occurred, (iv) acted with gross negligence in supervising subordinates, or (v) "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d at 873.[3] However, if a supervisor defendant "is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' [the] violation." See Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008).

The amended complaint mentions Griffin only once, in a paragraph alleging he worked at Green Haven as a DOCCS superintendent. (See Am. Compl. ¶ 8). Because the amended complaint contains no allegations respecting Griffin's conduct, plaintiff plainly fails to plead Griffin's personal involvement in a constitutional violation.

---

[3] District courts within this circuit are divided as to whether claims alleging personal involvement under some of these factors remain viable. See, e.g., Doe v. New York, 97 F. Supp. 3d 5, 11–12 (E.D.N.Y. 2015) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

6

As for Annucci, plaintiff claims Annucci knew before the alleged assault about widespread excessive force in DOCCS facilities, in part because he allegedly received daily reports of incidents involving the use of force and of "other breaches of security in DOCCS prisons." (Am. Compl. ¶ 6). But the amended complaint does not specify what types of reports Annucci allegedly received, when or how often he allegedly received them, or what the reports allegedly concluded or contained. Absent any such allegations, plaintiff fails adequately to plead Annucci knew of but failed to remedy an ongoing constitutional violation. And while the amended complaint also references two prior civil lawsuits (along with other unspecified "DOCCS reports"), both cases are at least twelve years old and involved the New York City Department of Correction, not the New York State Department of Corrections and Community Supervision. (See id. ¶ 29 (citing Sheppard v. Phoenix, 210 F. Supp. 2d 450 (S.D.N.Y. 2002); id. ¶ 30 (citing Ingles v. Toro, 438 F. Supp. 2d 203 (S.D.N.Y. 2006))).

Accordingly, the Court dismisses plaintiff's Section 1983 claims against Griffin and Annucci in their individual capacities for failure adequately to plead their personal involvement.

III.   Monell Claims

The moving defendants contend plaintiff's claims against them in their official capacities should be dismissed for failure to state a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Court agrees.

"[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997) (second and third alterations in original) (quoting Kentucky v. Graham, 473 U.S. 159, 165, (1985)). Thus, the Monell standard governs plaintiff's official-capacity claims.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694.

A plaintiff may satisfy Monell's policy or custom requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Monell claims must satisfy the plausibility standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). Accordingly, "boilerplate assertions of municipal policy are insufficient," and "[f]acts supporting the policy's existence must be pled." Felix v. City of New York, 344 F. Supp. 3d 644, 653–54 (S.D.N.Y. 2018) (quoting Bishop v. City of New York, 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016)) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).[4]

---

[4] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

8

Moreover, to adequately plead a policy or custom, a plaintiff must allege more than one instance of a constitutional violation. See DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). A plaintiff typically must also adequately plead similar incidents involving others. See, e.g., Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 14 (2d Cir. 2015) (summary order) (affirming dismissal of Monell claim and noting, "other than the plaintiff, the amended complaint provides only one additional example of a similar incident").

Plaintiff fails adequately to plead a DOCCS policy or custom. The amended complaint does not allege any other specific instances of excessive force at Green Haven or any other DOCCS facility, nor does plaintiff specifically allege any other inmate in DOCCS custody suffered excessive force. Moreover, as noted above, the cases plaintiff cites as evidence of a policy or custom at DOCCS did not involve DOCCS at all, but rather concerned the New York City Department of Correction.

Thus, because plaintiff fails adequately to support his conclusory allegation of a DOCCS policy or custom, the Court dismisses plaintiff's Monell claims against the moving defendants in their official capacities.

IV. Failure to Intervene

Defendants argue plaintiff fails adequately to plead that Pollins failed to intervene in Rowland's alleged use of excessive force.

The Court disagrees.

9

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases).

To state a claim for failure to intervene, a plaintiff must adequately plead someone other than the defendant used excessive force, and (i) the defendant "had a realistic opportunity to intervene and prevent the harm"; (ii) "a reasonable person" in the defendant's shoes "would know that the victim's constitutional rights were being violated"; and (iii) the defendant did not "take reasonable steps to intervene." Pierce v. City of New York, 293 F. Supp. 3d 306, 313 (E.D.N.Y. 2017) (citation omitted). In other words, an officer's failure to intervene "results in liability where an officer observes excessive force is being used or has reason to know that it will be." Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) (citing Anderson v. Branen, 17 F.3d at 557). Accordingly, "[a] corrections officer who witnesses an assault upon an inmate may be responsible for any resulting constitutional deprivation," Phillips v. Roy, 2011 WL 3847265, at *5 (N.D.N.Y. Aug. 29, 2011), if "the failure to intercede was a proximate cause of the harm," Bah v. City of New York, 2014 WL 1760063, at *7 (S.D.N.Y. May 1, 2014) (citing Porter v. Goord, 467 F. App'x 21, 23 (2d Cir. 2012) (summary order)).

The amended complaint plausibly alleges Pollins had a reasonable opportunity to intervene in Rowland's alleged assault but failed to do so. Rowland allegedly (i) grabbed plaintiff, (ii) threw plaintiff onto a bed, (iii) punched plaintiff in the head, and (iv) screamed at plaintiff, asking if he still wanted to speak with a sergeant and threatening to "send [plaintiff's] fucking ass to the Box." (Am. Compl. ¶ 17). According to the amended complaint, Pollins was in the room the whole time, laughing and staring at plaintiff. (Am. Compl. ¶ 23). While discovery may (or may not) reveal that Pollins was not in the room or that the incident transpired

too quickly for him to have had a reasonable chance to intervene, the Court cannot so conclude at this early stage of the case, when the Court must accept plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor.

Therefore, the Court declines to dismiss plaintiff's failure to intervene claim against Pollins. Pollins may renew this argument at summary judgment upon the completion of discovery.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's (i) claims against Rowland, and (ii) failure to intervene claim against Pollins shall proceed. All other claims are dismissed.

By March 28, 2019, Pollins shall file an answer to the amended complaint.

The Clerk is instructed to (i) terminate the motion (Doc. #25), and (ii) terminate defendants Anthony J. Annucci and Superintendent Thomas Griffin.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 14, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

11